UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
      :
**MARCUS WILSON**,
      :
                   Plaintiff,
      :    **MEMORANDUM DECISION AND**
           – against –
                                                **ORDER**
      :
                                                 18-CV-2262 (AMD) (MMH)
**CITY OF NEW YORK**, *et al.*,
      :
      :
                   Defendants.
      :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

        Marcus Wilson, who is currently incarcerated at Five Points Correctional Facility, brings this *pro se* action pursuant to 42 U.S.C. § 1983 against the City of New York and various individual defendants.[1] The plaintiff alleges that the defendants denied him his First Amendment right to practice his religion, causing injury to him and the entire Muslim community at the Brooklyn Detention Complex, formerly known as the Brooklyn House of Detention.[2] (ECF No. 2 at 4-5.) Now before the Court is the defendants' motion to dismiss the complaint for failure to state a claim. (ECF No. 22.) For the reasons that follow, the defendants' motion is granted in part.

---

[1] The individual defendants include: Scott M. Stringer, the New York City Comptroller (the "Comptroller"); Joseph Ponte, the former Commissioner of the New York City Department of Corrections (the "Commissioner"); Robin Beaulieu, Warden of the former Brooklyn House of Detention (the "Warden"); and Deputy Warden of Security John Doe.

[2] On April 20, 2018, Magistrate Judge Lois Bloom granted the plaintiff leave to proceed *in forma pauperis*. (ECF No. 8.)

## BACKGROUND[3]

While the plaintiff was incarcerated at the Brooklyn House of Detention—now the Brooklyn Detention Complex—he was the "resident Imam;" in this role, he led Muslim religious services and served as an "understudy" when the New York State Department of Corrections did not provide an outside imam. (ECF No. 2 at 4-5; ECF No. 27 at 3.) On June 25, 2017, "during the holy and spiritual celebration of Ramadan," the outside imam was not at the detention center because his facility pass had expired the day before. (ECF No. 2 at 4; ECF No. 27 at 9.) According to the plaintiff, the defendants knew that he was a practicing Muslim and the in-house imam, and nevertheless "deliberately left him locked in his cell." (ECF No. 2 at 4.) The plaintiff could not do the Eid al-Fitr prayer in his cell, because the prayer must be done "properly" on an appointed date and time, in an appointed place of worship, with a congregation. (ECF No. 27 at 5.) By ensuring that neither the plaintiff nor the outside imam could perform the communal Eid al-Fitr prayer, the defendants caused "spiritually motivated injury to the plaintiff and the entire Muslim community" at the facility. (ECF No. 2 at 5; ECF No. 27 at 3.)

The plaintiff alleges this was an "act of discrimination" in violation of his First Amendment right to free exercise of religion. (ECF No. 2 at 4-6.) The plaintiff also contends that the defendants violated his rights under the Fourth, Fifth, Eighth, Ninth, Tenth and Fourteenth Amendments. (ECF No. 27 at 14-15.) He raises additional claims concerning the defendants' lack of response to complaints, investigations and discovery requests. (*Id.* at 11-14.)

---

[3] The facts are taken from the complaint (ECF No. 2) and the plaintiff's opposition to the motion (ECF No. 27). When a plaintiff proceeds *pro se*, a court "may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)). For purposes of this motion, I accept as true the factual allegations in the complaint and the opposition papers, and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

The plaintiff alleges he suffered a loss of faith in higher power, deprivation of Muslim practices, spiritual devastation, major depression, nightmares, headaches, anxiety and mental agitation, because he could not observe the holiday properly. (ECF No. 2 at 5.) He seeks damages for pain, suffering, stress and mental anguish, as well as punitive damages from each defendant totaling $160 million. (*Id.*)

On July 13, 2018, the defendants moved to dismiss the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 22.) They argue that the plaintiff did not allege facts that showed his right to free exercise of religion was substantially burdened, that claims against individual defendants should be dismissed because they were not personally involved in the violation, and that claims against the city should be dismissed because the plaintiff did not allege facts showing that the First Amendment violation was due to a policy, practice or custom giving rise to municipal liability. (*See* ECF No. 22-1 at 4-10.) Finally, the defendants maintain that the Prison Litigation Reform Act ("PLRA") bars the plaintiff from recovering compensatory damages because he has failed to allege that he suffered a physical injury. (*See id.* at 11.)

In light of the plaintiff's *pro se* status, the Honorable Roslynn R. Mauskopf granted his request to make an additional submission in opposition to the defendants' motion to dismiss, which he submitted on October 18, 2019. (*See* ECF No. 27.)[4]

## STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[4] The action was reassigned to me on July 6, 2021. On August 17, 2021, the plaintiff requested an extension to file a response to the defendants' motion, which I granted. (ECF No. 30.) On October 5, 2021, the plaintiff submitted his opposition, which appears to be identical to his October 18, 2019 submission. (*Compare* ECF No. 31 *with* ECF No. 27.)

3

(2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The plaintiff is proceeding *pro se*, so I evaluate his complaint by "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and interpret it to raise the strongest arguments it suggests, especially since it alleges civil rights violations. *See Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008); *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

## DISCUSSION

The plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983, which "provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). "[T]o state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting

under the color of state law.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).[5]

### I. First Amendment Free Exercise Claim

The plaintiff alleges that the defendants violated his First Amendment right to free exercise by leaving him locked in his cell instead of allowing him to lead the Eid al-Fitr prayer, or permitting an outside imam to lead the prayer. (*See* ECF No. 2 at 4-5; ECF No. 27 at 3, 7.)

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citation omitted). For example, prisoners have a constitutional right to participate in congregate religious services. *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.), *cert. denied*, 492 U.S. 909 (1989). However, free exercise rights are not absolute and must be "[b]alanced against . . . the interests of prison officials charged with complex duties arising from [the] administration of the penal system." *Ford*, 352 F.3d at 588 (citation and quotation marks omitted).

A prisoner does not have an established right to serve as a religious leader. *See Abdullah v. Leonardo*, No. 90-CV-975, 1994 WL 562594, at *2 (N.D.N.Y. Sept. 29, 1994) (holding that prison policy prohibiting inmates from serving as religious leaders for security reasons was constitutional). Moreover, courts have determined that inmates do not have the right to be provided with an outside religious leader. *See e.g.*, *Ward v. Rabideau*, 732 F. Supp. 2d 162, 179

---

[5] To the extent that the plaintiff is bringing claims on behalf of the Muslim community at the detention center, they are dismissed. A *pro se* litigant may represent himself but is not permitted to represent third parties. *See Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (per curiam); 28 U.S.C. § 1654. Courts in this circuit have extended this limitation to incarcerated *pro se* plaintiffs representing other incarcerated individuals. *See Smith v. Annucci*, No. 15-CV-602, 2016 WL 7396007, at *1 n.1 (N.D.N.Y. Nov. 28, 2016), *report and recommendation adopted*, No. 16-CV-602, 2016 WL 7392034 (N.D.N.Y. Dec. 21, 2016).

(W.D.N.Y. 2010) ("[T]he Constitution does not compel DOCS to provide a Jewish chaplain, as long as it makes available an alternate means of worship."); *Graham v. Coughlin*, No. 86-CV-163, 2000 WL 1473723, at *6 (S.D.N.Y. Sept. 29, 2000) ("[T]he First Amendment does not compel that the prison provide inmates with the spiritual counselors of their choice. The State need merely afford each prisoner a reasonable opportunity to worship."); *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987) ("[P]rison administration is not under an affirmative duty to provide each inmate with the spiritual counselor of his choice."). Accordingly, the plaintiff's allegations that the defendants did not provide an outside imam or permit the plaintiff to serve as the spiritual leader do not, standing alone, establish a constitutional violation.

To state a free exercise claim, an inmate "must make a threshold showing that 'the disputed conduct substantially burdened his sincerely held religious beliefs.'" *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration omitted) (quoting *Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013)); *see also Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006). "Once [an inmate] establishes this burden, '[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.'" *Smith v. Perlman*, No. 11-CV-20, 2012 WL 929848, at *7 (N.D.N.Y. Mar. 19, 2012) (quoting *Salahuddin*, 467 F.3d at 275). The burden then shifts back to the inmate "to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (citation, quotation marks, and alteration omitted).

To demonstrate a "substantial burden," the plaintiff must show that "the state [has] put[] substantial pressure on [him] to modify his behavior and to violate his beliefs." *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (citation and quotation marks omitted). Generally, missing one religious service does not constitute a violation of a

6

plaintiff's constitutional rights. *See*, *e.g.*, *Johnson v. Newton*, No. 02-CV-1277, 2007 WL 778421, at *5 (N.D.N.Y. Mar. 13, 2007) ("[M]issing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion" (citation and quotation marks omitted)); *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 588 (S.D.N.Y. 2015) (concluding that "preclusion from attending two religious services is not, without more, a 'substantial burden' on a plaintiff's free exercise of religion," and collecting cases). However, when an inmate's "participation in the [religious service], in particular, is considered central or important to [the inmate's] practice of [his religion]," a substantial burden may exist. *Ford*, 352 F.3d at 593-94; *see, e.g.*, *Kravitz v. Annucci*, No. 16-CV-8999, 2019 WL 1429546, at *5 (S.D.N.Y. Mar. 29, 2019) (holding that missing one Shavuot service was substantial burden because of holiday's centrality or importance); *Lombardo v. Freebern*, No. 16-CV-7146, 2018 WL 1627274, at *12 (S.D.N.Y. Mar. 30, 2018) (holding that missing one Passover Seder was substantial burden). Specifically, the Second Circuit has found that failure to provide the Eid al-Fitr feast can impose a substantial burden. *Ford*, 352 F.3d at 593-94 (holding that Eid al-Fitr meal was "critical to [the plaintiff's] observance as a practicing Muslim"); *Shakur v. Selsky*, 391 F.3d 106, 120 (2d Cir. 2004) (finding that the plaintiff established substantial burden when the defendants refused to allow him to attend Eid al-Fitr feast).

      The defendants argue that the burden imposed on the plaintiff was not substantial because he missed only one religious service and did not allege that the Eid al-Fitr prayer was "central and important" to his beliefs.[6] (ECF No. 22-1 at 4-7.) However, in his supplemental opposition, the plaintiff explains that the Eid al-Fitr prayer celebrating the end of the "major fast" Ramadan holds "significance" and is "importan[t] to the Believer, Muslim or Members of the Islamic

---

[6] The defendants do not dispute that the plaintiff's religious beliefs are sincerely held.

7

Faith." (ECF No. 27 at 3.) He asserts that the prayer "must be done on its appointed date issued by the [Lunar Calendar] and by the schools of Islam Scholars whom are appointed to notify the [world] of the dates," in Arabic at a place of worship with a congregation. (*Id*. at 5 (brackets in original).) The plaintiff emphasizes that "[t]his prayer is not a general weekly function but precedent to [commemorate] the completion of the month [of] Ramadhan and the issuance of the revelation of the Holy Qur'an." (ECF No. 22-2 at 1.) These allegations are sufficient to establish that the Eid al-Fitr feast is a "central or important" part of the plaintiff's religious practice. *See Johnson v. Doty*, No. 15-CV-7823, 2019 WL 2137361, at *5 (S.D.N.Y. May 16, 2019) (finding allegations that "Eid-ul-Adha is a group prayer service," "imperative part of the Ramadan holiday" and "must be administered by an Imam, before noon" sufficient to show that Eid al-Adha service was central or important part of the plaintiff's practice); *Walker v. Martuscello*, No. 18-CV-1189, 2019 WL 7971881, at *6 (N.D.N.Y. Dec. 9, 2019) (finding allegations that "[p]articipation in Jumu'ah service/congregational prayer service is considered central or important" to plaintiff's religious practice sufficient to defeat motion to dismiss), *report and recommendation adopted*, No. 18-CV-1189, 2020 WL 132313 (N.D.N.Y. Jan. 13, 2020). Accordingly, the defendants' motion to dismiss on this basis is denied.

## II. Claims Against Individual Defendants

A plaintiff cannot recover against a defendant under Section 1983 solely on a theory of vicarious liability or *respondeat superior*. *See, e.g.*, *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*."). In other words, the plaintiff cannot sue the Comptroller, the Commissioner and the

8

Warden simply because of their supervisory positions. Instead, the plaintiff must sufficiently allege that they were personally involved in the violation of his constitutional rights. *See Raspardo v. Carlone*, 770 F.3d 97, 115-116 (2d Cir. 2014) ("If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant. . . . § 1983 requires individual, personalized liability on the part of each government defendant.").

In order to establish a defendant's personal involvement in a Section 1983 violation, the plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

### a. The Comptroller

The plaintiff asserts that the Comptroller, who is responsible for distributing and executing agency budgets, "fail[ed] to issue financial funding for the scheduled Eid Al-Fitr prayer." (ECF No. 27 at 8.) But individual liability cannot be imposed solely because of the defendant's high-ranking government position. *See, e.g.*, *Iqbal*, 556 U.S. at 676. The plaintiff does not allege facts showing that the Comptroller had personal knowledge of or direct responsibility for funding the Eid al-Fitr prayer at the Brooklyn House of Detention on the day at issue. *See Jones v. DeBlasio*, No. 15-CV-4753, 2017 WL 1331247, at *2-3 (E.D.N.Y. Apr. 11, 2017) (dismissing claims against government officials such as the mayor when complaint did not

9

allege he had personal knowledge of or responsibility for plaintiff being unable to find housing due to race); *McKinnon v. Patterson*, 568 F.2d 930, 934-35 (2d Cir. 1977) (dismissing claim against former Commissioner of Corrections when there was no evidence he participated directly in, had knowledge of, had direct responsibility for or control over prison disciplinary proceedings causing constitutional violation). Accordingly, the claims against the Comptroller are dismissed.

### b. The Commissioner

To establish the Commissioner's personal involvement, the plaintiff simply recites the legal standard, which is not sufficient to overcome a motion to dismiss. (*See* ECF No. 2 at 6-7); *see also Davis v. Cty. of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005*)* ("A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal."). The plaintiff's vague and conclusory allegation that the Commissioner did not "properly supervise, train and prepare [his] staff" (ECF No. 27 at 3), is similarly deficient. *See Webster v. Fischer*, 694 F. Supp. 2d 163, 179 (N.D.N.Y.) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability." (citing *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir. 2009))), *aff'd*, 398 F. App'x 683 (2d Cir. 2010). Accordingly, the claims against the Commissioner are dismissed.

### c. The Warden

The plaintiff alleges that the Warden is responsible either to provide an outside imam or to permit the plaintiff to lead the Eid al-Fitr prayer. Specifically, the plaintiff alleges that due "to an expired pass [which is a clergy unescorted Deputy pass]; the facility warden had to contact the

10

NYCDOC; commissioner and [Islamic Services Trailer, Volunteer Services Trailer, et.al., to obtain an outside coordinator] and or allow deponent to [initiate the prayer]." (ECF No. 27 at 9 (brackets in original).) This allegation supports a plausible inference of personal involvement. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 268-69 (S.D.N.Y. 2014) (holding that the plaintiff sufficiently alleged personal involvement where he alleged that the warden was "ultimately responsible" for religious programming policies, claimed the warden was grossly negligent in training staff, and listed specific DOC policies that violated his rights); *cf. Adams v. Galletta*, 966 F. Supp. 210, 212 (S.D.N.Y. 1997) (holding that allegations that wardens were "responsible for the overall operation" of detention center did not establish personal involvement). For this reason, the defendants' motion to dismiss the Warden is denied.

d. **Deputy Warden of Security John Doe**

Claims against Deputy Warden of Security John Doe are dismissed because the plaintiff did not discuss the Deputy Warden in his papers. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) ("Since . . . [the] defendant is nowhere mentioned or referenced in the body of the amended complaint, [the] plaintiff has not adequately pled his personal involvement in any of the constitutional deprivations alleged in the amended complaint. Accordingly, [the] plaintiff's Section 1983 claims are dismissed.").

**III.** **Claims Against the City of New York**

A municipality may not be held liable under Section 1983 solely because its employee committed a civil wrong; in other words, municipalities are not liable through the doctrine of *respondeat superior*. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403

11

(1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (plurality opinion). Thus, in order to state a claim against a municipality under Section 1983 based on the acts of a public official, a plaintiff must allege: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).

A custom or policy is established "in one of four ways: by alleging the existence of (1) a formal policy, (2) action taken or decisions made by policymakers that caused the violation [alleged], (3) a practice so persistent and widespread that it constitutes a 'custom or usage,' or (4) a failure to properly train or supervise municipal employees." *Byvalets v. New York City Hous. Auth.*, No. 16–CV–6785, 2017 WL 7793638, at *14 (E.D.N.Y. July 28, 2017) (quoting *White v. City of New York*, 206 F. Supp. 3d 920, 937 (S.D.N.Y. 2016)) (internal quotation marks omitted), *report and recommendation adopted*, No. 16-CV-6785, 2018 WL 1067732 (E.D.N.Y. Feb. 23, 2018). There must be a "direct causal link" between a municipal policy and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The plaintiff has not alleged facts sufficient to sustain a municipal liability claim.

First, the plaintiff does not point to a specific municipal policy that led to the deprivation of his right to free exercise. (ECF No. 2 at 9-10); *see Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) ("The allegations that [the defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient."); *Siino v. City of New York*, No. 14-CV-7217, 2015 WL 4210827, at *4 (E.D.N.Y. Jul. 9, 2015) ("Plaintiff's vague and conclusory assertions that the City of New York has policies, practices and customs which violated her constitutional rights are insufficient to meet the pleadings standards required to

12

establish liability under *Monell*.").

Second, the plaintiff has not alleged that he was locked in his cell during the Eid al-Fitr prayer because of a custom or policy. Indeed, the plaintiff merely alleges that the Comptroller failed to fund the Eid al-Fitr prayer on one occasion at one detention center. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Finally, a single incident of alleged wrongdoing by a non-policymaker is not enough to maintain a Section 1983 claim against a municipality. *See Treadwell v. County of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016); *Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 870 (S.D.N.Y. 1992) (noting that a "municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees"). This limitation extends to failure-to-train claims. *Connick v. Thompson*, 563 U.S 51, 62 (2011). Accordingly, the plaintiff's allegations that the Commissioner and Warden failed to train prison staff in connection with the Eid al-Fitr prayer cannot establish municipal liability.

### IV.  Other Claims

####   a.  Other Constitutional Violations

The plaintiff claims that the defendants violated his Fourth, Fifth,[7] Eighth,[8] Ninth,[9] Tenth,[10] and Fourteenth Amendment rights.  (ECF No. 27 at 14-15.)  The plaintiff does not allege any facts that could support the Fourth, Fifth, Eighth, Ninth or Tenth Amendment claims.

The plaintiff's submissions may be liberally construed to allege a violation of his Fourteenth Amendment right to equal protection of the laws: "Comptroller, Commissioner, Warden, and the City of New York, failed, refused, forgot, to issue and or consider the rights of the muslim population at Brooklyn House of Detention to be able to have a chaplin lead their prayer, and or allow [the plaintiff] to lead the prayer and or have the prayer at its prescribed registered date and has done this 'only' to the practicing muslim, not to the christian, catholic, buddist, agnostic, [etc.]"  (ECF No. 27 at 7-8.)  However, this statement is conclusory, and does not satisfy the personal involvement requirement discussed above.  *See Richard v. Fischer*, 38 F. Supp. 3d 340, 356 (W.D.N.Y. 2014) (dismissing Equal Protection claim when plaintiff argued, without further detail, "'no other inmate in Five Points Correctional Facility was isolated by programming,' which 'verifies that I/petitioner was racially discriminated against . . .'" and "'no other inmate at Five Points Correctional Facility' was restricted to an employment position in his

---

[7] The Fifth Amendment is not applicable because it applies only to the federal government and not to state actors.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

[8] The Eighth Amendment does not apply because the plaintiff was a pre-trial detainee when the incident at issue occurred.  (ECF No. 2 at 8.); *Mayer v. City of New Rochelle*, No. 01-CV-4443, 2003 WL 21222525, at *8 (S.D.N.Y. May 27, 2003) (citing *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)).

[9] The Ninth Amendment does not guarantee the plaintiff any specific rights and therefore cannot be a basis for a Section 1983 claim.  *See Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008).

[10] The Tenth Amendment does not guarantee the plaintiff any specific rights, and therefore this claim is dismissed.  *See Mann by Parent v. Meachem*, 929 F. Supp. 622, 634 (N.D.N.Y. 1996).

or her cellblock, but [ ] he was isolated to programs in his cellblock, presumably because of his race and religion").

### b. The Defendants' Failure to Respond

The plaintiff faults the defendants for being unresponsive to discovery requests. (ECF No. 27 at 11-14.) More specifically, the plaintiff argues that the Comptroller "fails to forward investigations, answer F.O.I.L., respond to inquiries with any definitive answer and has done this as a direct discriminatory policy. The same conduct of refusing to respond to NYSDOCs investigations of detainees are performed and have consistently been denied by commissioner Ponte, warden Robin Beaulieu." (*Id.* at 14.) According to the plaintiff, the Comptroller has a "devious and deceitful policy, program and an official scheme to defraud all City claims from NYSDOCS detainees." (*Id.* at 11.)

I interpret these allegations to raise an Equal Protection claim that the Comptroller had a "discriminatory policy" for answering information requests. To plead a violation of the Equal Protection Clause, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). The plaintiff has not alleged any facts that demonstrate that he was treated differently than other similarly situated inmates, or that such disparate treatment was the result of any constitutionally impermissible motive.

### V.    Limitation on Damages

The defendants assert that the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), precludes compensatory damages because the plaintiff did not allege that he suffered a physical injury. (*See* ECF No. 22 at 11.) Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

15

emotional injury suffered while in custody without a prior showing of physical injury;" the statute "applies to claims in which a plaintiff alleges constitutional violations." *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002). "While 'there is no statutory definition of "physical injury" as used in section 1997e(e),' . . . a plaintiff's physical injury must be 'more than *de minimis*.'" *Abreu v. Nicholls*, No. 04-CV-7778, 2011 WL 1044373, at *3 (S.D.N.Y. Mar. 22, 2011) (quoting *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999)), *report and recommendation adopted*, No. 04-CV-7778, 2012 WL 1079985 (S.D.N.Y. Mar. 30, 2012).

The plaintiff states that he suffered a "loss of faith in higher power," "deprivation of Muslim practice, spiritual devastation, major depression, nightmares, headaches, anxiety" and "mental agitation." (ECF No. 2 at 5.) Without more, this does not satisfy the "physical injury" requirement of Section 1997e(e). *See Roldan v. Kang*, No. 13-CV-6889, 2016 WL 4625688, at *5 (S.D.N.Y. Sept. 6, 2016) ("Depression and dizziness do not qualify as 'actual physical injury' under § 1997e(e)."); *Antrobus v. City of New York*, No. 11-CV-2524, 2014 WL 1285648, at *6 (S.D.N.Y. Mar. 27, 2014) ("[E]motional distress, emotional d[e]spair, mental anguish, post traumatic stress disorder, . . . [and] paranoia disorder" do not meet the "physical injury" requirement under Section 1997e(e).); *Abreu*, 2011 WL 1044373, at *3 (Allegations of "chronic headaches," "constant dizziness," "black[ing] out," and the inability to sleep did not constitute "physical injury.").

However, Section 1997e(e) "does not restrict a plaintiff's ability to recover . . . punitive damages." *Thompson*, 284 F.3d at 416. Thus, the PLRA's physical injury requirement does not

16

bar the plaintiff's claims for punitive damages.[11]

## CONCLUSION

Because the plaintiff is proceeding *pro se,* out of an abundance of caution, I grant him leave to amend his complaint within 30 days of the date of this order.  *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015).  In particular, the plaintiff must allege facts in the amended complaint supporting the claims against the Comptroller, Commissioner, Deputy Warden of Security John Doe and the City of New York, and the Fourth, Fifth, Eighth, Ninth, Tenth and Fourteenth Amendment claims.  The plaintiff is advised that an amended complaint completely replaces the original complaint, so he must include in the amended complaint all the necessary information to support his claims.  Any amended complaint must be captioned "Amended Complaint" and bear the same docket number as this order (18-CV-2262 (AMD) (MMH)).  If the plaintiff does not file an amended complaint within 30 days, the Court will dismiss the Comptroller, Commissioner, Deputy Warden of Security John Doe and the City of New York, and the Fourth, Fifth, Eighth, Ninth, Tenth and Fourteenth Amendment claims.

**SO ORDERED.**

                                          s/Ann M. Donnelly
                                          ANN M. DONNELLY
                                          United States District Judge

Dated: Brooklyn, New York
       December 14, 2021

---

[11] The plaintiff's recovery of punitive damages is limited to individual defendants because local governments, such as the City of New York, are immune from punitive damages under 42 U.S.C § 1983.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).