UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
**MARCUS WILSON**,                                                 :
                                                                   :
                              Plaintiff,                           :
                                                                   :  **MEMORANDUM DECISION AND**
           – against –                                             :  **ORDER**
                                                                   :
                                                                   :  18-CV-2262 (AMD) (MMH)
**CITY OF NEW YORK**, *et al.*,                                    :
                                                                   :
                                                                   :
                              Defendants.                          :
                                                                   :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

On April 18, 2018, the plaintiff, who is currently incarcerated at Five Points Correctional Facility, filed this *pro se* action pursuant to 42 U.S.C. § 1983 against the City of New York and various individual defendants.  On December 14, 2021, I dismissed the plaintiff's Fourth, Fifth, Eighth, Ninth, Tenth and Fourteenth Amendment claims because the plaintiff did not allege sufficient facts to support them.  (ECF No. 34 at 14.)[1]  I also dismissed the plaintiff's First Amendment claims against former New York City Comptroller Scott M. Stringer, former New York City Department of Correction Commissioner, Joseph Ponte, and the Deputy Warden of Security for the Brooklyn Detention Complex, designated as John Doe, because the plaintiff did not allege these individuals were personally involved in depriving him of his constitutional rights.  (*Id.* at 9-13.)  I permitted the plaintiff's First Amendment free exercise claim against Brooklyn Detention Complex Warden Robin Beaulieu to proceed.  (*Id.* at 11.)  In addition, I granted the plaintiff leave to file an amended complaint within 30 days to cure the deficiencies I identified in his original complaint.  (*Id.* at 17.)

---

[1] This case was re-assigned to me on July 6, 2021 from Judge Roslynn R. Mauskopf.

On January 11, 2022, the plaintiff filed a hand-written amended complaint, followed by a typed copy of the same amended complaint on February 22, 2022. (ECF Nos. 35, 38.) In light of the plaintiff's *pro se* status, I construed the amended complaint as a supplement to the original complaint. (ECF entry Mar. 14, 2022.) Now before the Court is the New York City Corporation Counsel's motion to dismiss the complaint, as amended, in part. (ECF No. 40.)[2]

## BACKGROUND[3]

In the amended complaint, the plaintiff repeats allegations that he served as the resident Imam while incarcerated at the Brooklyn Detention Complex, and that he was not permitted to leave his cell on June 25, 2017, so that he could properly observe Eid al-Fitr. (ECF No. 38 at 3.) The plaintiff alleges his confinement constituted a physical injury because his movement in physical space was restricted, as well as an illegal seizure under the Fourth Amendment. (*Id.*) The plaintiff also alleges he suffered spiritual devastation, major depression, headaches, and dizziness because he was not permitted to properly observe Eid al-Fitr. (*Id.* at 10.) The plaintiff describes the various ritual components of Eid al-Fitr observance in detail, and attaches relevant excerpts from a prayer book. (*Id.* at 3, 16-20.)

---

[2] The Corporation Counsel has filed notices of appearance on behalf of defendants New York City, Scott M. Stringer, Joseph Ponte and Robin Beaulieu. (ECF Nos. 15, 29, 44, 52.) In addition, Mark G. Towes, an Assistant Corporation Counsel, is listed on the docket as the attorney for Deputy Warden of Security John Doe.

[3] I do not repeat the factual allegations from the plaintiff's initial complaint, which I summarized in my December 2021 order. (ECF No. 34.) The facts herein are taken from the amended complaint (ECF No. 38), the plaintiff's opposition to the defendants' motion to dismiss the amended complaint (ECF No. 43), and the plaintiff's "rebuttal." (ECF No 48.) When a plaintiff proceeds *pro se*, a court "may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)). For purposes of this motion, I accept as true the factual allegations in the complaint and the opposition papers, and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

The plaintiff re-alleges, in a conclusory manner, that Department of Correction staff violated his Fourth, Fifth, Eighth, Ninth, Tenth and Fourteenth Amendment rights, and also adds claims for violations of the Seventh Amendment as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Religious Freedom Restoration Act ("RFRA"). (*Id.* at 4.)

The plaintiff also repeats his allegations that former New York City Comptroller Stringer is liable for preventing his observance of Eid al-Fitr because the "Comptroller is in charge of all Civil Law," and because the Comptroller, by virtue of the enforcement powers of his office, is ultimately responsible for ensuring that the New York City Department of Correction makes the necessary visitation and food preparation arrangements in advance of religious celebrations appearing on the Department of Correction calendar. (*Id.* at 6-7.)

In a similar vein, the plaintiff alleges that former New York City Department of Correction Commissioner Joseph Ponte is liable for the plaintiff's various injuries, because "[t]he commissioner is responsible to assure Care, Custody, Control in all Facilities." (*Id.* at 8.) The plaintiff also alleges that the Commissioner must have known that it was Eid al-Fitr, because it is a major religious holiday celebrated by Muslims worldwide "when the Muslim religion has been looked as participants of Terrorism." (*Id.*)

The plaintiff alleges that Deputy Warden of Security John Doe bears the same liability as Warden Beaulieu, because the Deputy Warden "has the same responsibility & knowledge of the Warden and a duty to maintain, manage, by his correction officer job" and also because the Deputy Warden "controls, screening, security, escorts, passes, entry & exits [and] allows extra curriculum events [that] need security." (*Id.*)

3

Finally, the plaintiff seems to assert a *respondeat superior* theory of liability with respect to the previously dismissed individual defendants, arguing that the Commissioner was the "only one person in charge of the activities in all jails[.]" (*Id.* at 10.) The plaintiff also generally alleges that the "NYCDOCS Commissioner, Warden of the facility . . . Comptroller all make Control, financial/security plans for [Eid al-Fitr] which will issue in all of the 14 NYCDOCS detention Centers[.]" (*Id.* at 9.)

Finally, the plaintiff alleges that while he was incarcerated at the Auburn Correctional Facility in May of 2021, New York State Department of Corrections staff stole his legal papers. (*Id.* at 5.)[4]

## STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The plaintiff is proceeding *pro se*, so I evaluate his complaint by "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

---

[4] As explained in prior orders, the Eastern District of New York is not the proper venue for the plaintiff's unrelated claims for deprivations he suffered while incarcerated at the Auburn Correctional Facility, which is located in the Northern District of New York. (ECF entry dated Nov. 10, 2021.) Furthermore, none of the named defendants in this action, who are all New York City officers, are liable for harms the plaintiff suffered while incarcerated in a New York State correctional facility.

4

curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and interpret it to raise the strongest arguments it suggests, especially since it alleges civil rights violations. *See Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008); *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

## DISCUSSION

### I. Claims Against Individual Defendants

As I explained in my December 2021 order, a plaintiff cannot recover against a defendant under Section 1983 solely on a theory of vicarious liability or *respondeat superior*. *See, e.g.*, *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*.").

As he did in his earlier complaint, the plaintiff sues the former Comptroller and the former Correction Commissioner because they held high positions of authority with oversight over the Department of Correction. (*See, e.g.*, ECF No. 38 at 10 ("There[']s only one person in charge of the activities in all jails the Commissioner.").)  The plaintiff does not allege that either the former Comptroller or the former Commissioner knew the plaintiff was not permitted to leave his cell at the Brooklyn Detention Complex to observe Eid al-Fitr, or that they did anything specific that contributed to the constitutional deprivations the plaintiff alleges. *See Raspardo v. Carlone*, 770 F.3d 97, 115-16 (2d Cir. 2014) ("If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the

5

defendant . . . . § 1983 requires individual, personalized liability on the part of each government defendant." (emphasis in original)); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.").

I also explained in my December 2021 order that § 1983 liability does not attach to the Comptroller merely because he oversaw New York City's finances, unless the Comptroller had personal knowledge of or direct responsibility for funding the Eid al-Fitr observances at the Brooklyn Detention Complex. (ECF No. 34 at 9); *see also Jones v. DeBlasio*, No. 15-CV-4753, 2017 WL 1331247, at *2-3 (E.D.N.Y. Apr. 11, 2017) (dismissing claims against government officials, such as the mayor, when the complaint did not allege they had personal knowledge of or responsibility for plaintiff being unable to find housing due to race).

I previously dismissed the plaintiff's claims against the Deputy Warden of Security, John Doe, because the original complaint did not refer to the Deputy Warden anywhere except the caption. (ECF No. 34 at 11.) In his amended complaint, the plaintiff alleges that the Deputy Warden contributed to keeping the plaintiff in his cell on Eid al-Fitr because he "controls, screening, security, escorts, passes, entry & exits [and] allows extra curriculum events [that] need security." (ECF No. 6 at 8.) I find that this allegation is sufficient to support a plausible inference of personal involvement by the Deputy Warden, since, according to the plaintiff, the Deputy Warden was responsible for making the arrangements necessary for the plaintiff to leave his cell on a prominent religious holiday. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 268-69 (S.D.N.Y. 2014) (holding that the plaintiff sufficiently alleged personal involvement where he alleged that the warden was "ultimately responsible" for religious programming policies, claimed the warden was grossly negligent in training staff, and listed specific DOC

6

policies that violated his rights). In any event, the Corporation Counsel does not address the plaintiff's allegations against the Deputy Warden of Security in their motion to dismiss the plaintiff's amended complaint.

## II. Claims Against the City of New York

The plaintiff alleges no new facts in his amended complaint that could cure the deficiencies in his *Monell* claim against the City of New York, only that the city is "in charge of every City Agency." (ECF No. 38 at 8.) As I previously explained in the December 2021 decision, a municipality may not be held liable under Section 1983 solely because its employee committed a civil wrong. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (plurality opinion).

The plaintiff does not identify any municipal policy that led to the deprivation of his right to free exercise, or allege that he was locked in his cell during Eid al-Fitr because of a custom or policy. *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) ("The allegations that [the defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient."); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

## III. Other Claims

In two conclusory sentences in his amended complaint, the plaintiff alleges that

Department of Correction staff violated his Fourth,[5] Seventh,[6] Eighth, Ninth, Tenth, and Fourteenth Amendment rights.[7]  (ECF No. 38 at 6-7.)  The plaintiff also invokes the Fifth Amendment.[8]  (*Id.* at 14.)  However, dismissal of these claims is warranted because the plaintiff alleges no additional facts to support them.[9]  *Mclean v. Cnty. of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *10 (S.D.N.Y. Dec. 3, 2018) (dismissing claims under the First, Fifth, Sixth and Fourteenth Amendments when it was "entirely unclear which of [the plaintiff's] rights under those Amendments he alleges were violated and how the [cause] of action is distinct from

---

[5] While pretrial detainees "retain a limited right to bodily privacy under the Fourth Amendment' . . . the Court has not located precedent that addresses a Fourth Amendment challenge to the 'seizure' of a pretrial detainee's *person*[.]"  *Swanson v. City of New York*, No. 16-CV-3231, 2017 WL 3130322, at *6 (E.D.N.Y. Jul. 21, 2017) (emphasis in original) (dismissing as not-cognizable the Fourth Amendment unlawful bodily seizure claim of a pre-trial detainee who was not allowed to seek outside medical care).

[6] The plaintiff appears to argue that Court violated the Seventh Amendment by dismissing some of his claims.  (ECF No. 38 at 10; ECF No. 48 at 3.)  But the Seventh Amendment does not prohibit courts from resolving questions of law without submitting the case to a jury.  *Huelbig v. Aurora Loan Servs.*, LLC, No. 10-CV-6215, 2011 WL 4348275, at *1 (S.D.N.Y. Sept. 16, 2011) (dismissing Seventh Amendment claims of plaintiff who argued that "because the Seventh Amendment affords him a right to a jury trial . . . his case . . . cannot be resolved through a mechanism such as a motion to dismiss").

[7] The amended complaint includes no additional allegations that support a Fourteenth Amendment equal protection claim.  To plead a violation of the Equal Protection Clause, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  Dismissal of the plaintiff's Fourteenth Amendment claims is warranted because the plaintiff does not expand on his conclusory assertion that Department of Correction officers did not interfere with the religious practices of Christian, Buddhist or agnostic detainees, nor does he allege that any of the named defendants acted with discriminatory intent.  *See Barone v. United States*, No. 12-CV-4103, 2014 WL 4467780, at *23 (S.D.N.Y. Sept. 10, 2014) ("Beyond merely stating the words 'equal protection' the complaint does not allege any facts that might suggest that plaintiff had been treated differently from any other person due to an impermissible motive on the part of the defendants.").

[8] I explained in my December 2021 order why the Fifth, Eighth, Ninth and Tenth Amendments do not support the plaintiff's § 1983 claims.  (ECF No. 34 at 14.)

[9] The plaintiff, without further explanation, also references RFRA.  (*See* ECF No. 38 at 4-5.)  However, the "Supreme Court held RFRA unconstitutional as applied to states and their subdivisions[.]"  *Ungar v. N.Y.C. Hous. Auth.*, No. 06-CV-1968, 2009 WL 125236, at *12 (S.D.N.Y. Jan. 14, 2009), *aff'd*, 363 F. App'x 53 (2d Cir. 2010) (citing *City of Boerne v. Flores*, 521 U.S. 507 (1997)).  To that end, "Congress responded to the *Boerne* decision by amending RFRA to remove all references to states and their subdivisions." *Id.*

the Plaintiff's other claims").[10]

## IV. Limitations on Damages

Finally, the plaintiff devotes the majority of his amended complaint to the legal argument that the injuries he alleged in his original complaint—spiritual devastation, major depression, nightmares, headaches, anxiety, and mental agitation—constitute physical injuries that entitle him to compensatory damages under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). (*See* ECF No. 38 at 3-4, 10-14.) While the plaintiff does not add any new factual allegations regarding his injuries, he argues that neither the Corporation Counsel nor the Court are "medical professionals and this can't dictate Medical or Mental Health ailments as physical or non-Physical that this is a fact the Jury decides[.]" (ECF No. 38 at 10.) Construed liberally, the plaintiff argues that the nature of his injuries is a question of fact that should not be resolved on a motion to dismiss. Upon further consideration, the Court agrees.

"A motion to dismiss is addressed to a 'claim'—not to a form of damages." *Amusement*

---

[10] The plaintiff asserts claims under RLUIPA in his amended complaint, which the Corporation Counsel does not seek to dismiss. (ECF No. 38 at 6-7.) "RLUIPA protects inmates by providing that a government shall not 'impose a substantial burden' on the 'religious exercise' of inmates in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means.'" *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (footnote omitted) (quoting 42 U.S.C. § 2000cc-1(a)). While RLUIPA claims for money damages against state instrumentalities are barred by the Eleventh Amendment, *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013), courts in this Circuit have allowed such claims against municipal officials to proceed, because the Eleventh Amendment does not prohibit suits for money damages against municipal instrumentalities. *Clark v. City of New York*, 560 F. Supp. 3d 732, 740 (S.D.N.Y. 2021). Here, the allegations that support the plaintiff's free exercise claim are also sufficient to support a claim under RLUIPA. *Shakur v. Selsky*, 391 F.3d 106, 120 (2d Cir. 2004) (holding that preventing an inmate from participating in the Eid al-Fitr feast qualifies as a substantial burden on religious observance that is sufficient to state a claim under both the free exercise clause of the First Amendment and RLUIPA). However, the plaintiff's RLIUIPA claims against the Comptroller, Commissioner and City of New York are dismissed, because courts in this Circuit have held that personal involvement is a necessary component of valid RLUIPA claims," *Amaker v. Lee*, No. 13-CV-5292, 2019 WL 1978612, at *5 (S.D.N.Y. May 3, 2019), and because RLUIPA claims may not be sustained against municipalities in the absence of allegations that the substantial burden on the plaintiff's religious exercise stemmed from an official policy, custom or practice, *see Valdez v. City of New York*, No. 11-CV-5194, 2014 WL 2767201, at *1 (S.D.N.Y. June 17, 2014).

9

*Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 (S.D.N.Y. 2010). Some courts in this Circuit strike plaintiffs' claims for compensatory damages pursuant to 42 U.S.C. § 1997e(e) at the motion to dismiss stage if they do not allege physical injuries in their pleadings. *See Rosado v. Herard*, No. 12-CV-8943, 2014 WL 1303513, at *13 (S.D.N.Y. Mar. 25, 2014) ("To the extent that [the plaintiff] seeks compensatory damages for mental or emotional harm, that claim will be dismissed, given [the plaintiff's] failure to allege physical injury."). But other courts have held that "at the motion to dismiss stage, the Court cannot, and need not, conclusively resolve the factual question of whether or not the plaintiff suffered physical injury in addition to his claimed mental and emotional injury." *Frieson v. City of New York*, No. 11-CV-4611, 2012 WL 1948782, at *2 (S.D.N.Y. May 30, 2012); *Rahman v. Schriro*, 22 F. Supp. 3d 305, 318 (S.D.N.Y. 2014) ("To the extent that Plaintiff also demands compensatory damages for claims based on emotional and mental injuries, he may not do so absent a showing of physical injury, but the Court cannot say at [the motion to dismiss] stage that Plaintiff will not be able to make such a showing."); *see also In re Nassau Cnty. Strip Search Cases*, No. 99-CV-2844, 2010 WL 3781563, at *2 (E.D.N.Y. Sept. 22, 2010) ("As § 1997e(e) is a limitation on recovery and not an affirmative defense to liability, it need not be pled."). Accordingly, "even when a claim is potentially subject to the PLRA's limitation, the prisoner need not plead physical injury in his complaint." *Rodriguez v. City of New York*, No. 14-CV-8647, 2016 WL 11483837, at *11 (S.D.N.Y. Aug. 2, 2016), *report and recommendation adopted*, No. 14-CV-8647, 2016 WL 5476003 (S.D.N.Y. Sept. 29, 2016).

In addition, "there is an exception to the aforementioned PLRA preclusion of compensatory damages in the absence of physical injury that is applicable to cases wherein the constitutional right that is allegedly violated arises under the First Amendment." *Lipton v. Cnty.*

*of Orange, NY*, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004). "Indeed, courts in this district have explicitly noted that § 1997e(e) 'does not bar an award of compensatory damages for First Amendment violations, which allege intangible deprivations of liberty and personal rights.'" *George v. Cnty. of Westchester*, No. 17-CV-3632, 2018 WL 3364393 (S.D.N.Y. July 10, 2018); *see Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *8 (S.D.N.Y. Feb. 14, 2018) ("Section 1997e(e) does not bar Plaintiff's [free exercise] claims here, because it does not 'bar an award of compensatory damages for First Amendment violations,' which allege 'intangible deprivations of liberty and personal rights.'" (internal citations omitted)). Accordingly, the Corporation Counsel's request to dismiss the plaintiff's request for compensatory damages is denied at this time.

The Corporation Counsel also argues that the plaintiff cannot recover punitive damages because the plaintiff has not alleged malicious intent on the part of any of the defendants. (ECF No. 41 at 9, 19-22.) But this request is similarly procedurally premature. *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019) ("Because punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is 'procedurally premature.'"); *Jones v. City of New York*, No. 18-CV-1937, 2020 WL 1644009, at *17 (S.D.N.Y. Apr. 2, 2020) (denying motion to dismiss request for punitive damages by New York City officials in the context of a §1983 action as procedurally premature).

**V.    Statute of Limitations**

"[A]ny attempt to name a John Doe defendant in a section 1983 case brought in New York is subject to the applicable three-year statute of limitations[.]" *Sandoz v. Doe*, No. 17-CV-5447, 2020 WL 3318262, at *11 (S.D.N.Y. June 18, 2020). "'John Doe' pleadings cannot be

11

used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Id.* However, because the statute of limitations for § 1983 actions is derived from New York law, New York law also governs the circumstances under which a named party may replace a John Doe after the statute of limitations has expired. *Hogan v. Fischer*, 738 F.3d 509, 518-19 (2d Cir. 2013).

N.Y. C.P.L.R. § 1024 creates a special procedure for claims alleged against John Doe defendants, and "New York courts have interpreted this section to permit John Doe substitutions *nunc pro tunc*" in circumstances where the plaintiff has "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name" and "describe[d] the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Id.* (internal quotation marks omitted).

The plaintiff satisfies both requirements of § 1024. In 2017, the plaintiff submitted multiple Freedom of Information Law Requests to the Brooklyn Detention Center, which do not appear to have been answered. (ECF No. 21 at 13-15.) Furthermore, the plaintiff's complaint provides sufficient detail to give notice to the Deputy Warden that he is an intended defendant, such as the date and circumstances under which the plaintiff was prohibited from observing Eid al-Fitr, as well as a description of the Deputy Warden's job responsibilities on that date.

By contrast, the plaintiff's RLUIPA claim against the Deputy Warden cannot be salvaged by the more liberal standard for amended pleadings under N.Y. C.P.L.R. § 1024 because RLUIPA is subject to a federal rather than state statute of limitations. *See Congregation Adas Yereim v. City of New York*, 673 F. Supp. 2d 94, 107 (E.D.N.Y. 2009) ("It is undisputed that the four-year catch-all federal statute of limitations, codified at 28 U.S.C. § 1658(a), governs claims brought under RLUIPA."). The Second Circuit has held that a plaintiff's lack of knowledge of a

12

John Doe defendant's name does not constitute a mistake of identity that would allow an amended pleading to circumvent an applicable statute of limitations pursuant to Federal Rule of Civil Procedure 15(c)(1)(C). *Hogan*, 738 F.3d at 518 ("This Court's interpretation of Rule 15(c)(1)(C) makes clear that the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'").

Nonetheless, "[t]he doctrine of equitable tolling 'is read into every federal statute of limitation.'" *Kone v. Joy Constr. Corp.*, No. 15-CV-1328, 2016 WL 866349, at *2 (S.D.N.Y. Mar. 3, 2016) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). Under that doctrine, a "statute of limitations may be equitably tolled if a plaintiff show[s] '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Derti v. Barg*, No. 19-CV-10215, 2021 WL 4776359, at *4 (S.D.N.Y. Oct. 12, 2021) (citing *Sides v. Paolano*, 2021 WL 4256864, at *1 (2d Cir. Sept. 20, 2021)). "To show extraordinary circumstances prevented a plaintiff from filing his complaint on time, he must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id.* (internal citations omitted).

The Court finds that the plaintiff has been pursuing his rights diligently. As mentioned above, the plaintiff submitted multiple Freedom of Information Law requests to the Department of Corrections in 2017, to gain more details about the circumstances surrounding his confinement on Eid al-Fitr in June 2017, but does not appear to have received a response. (ECF No. 21 at 13-15.) In addition, the plaintiff has regularly inquired about the status of his case with the Court, and sought discovery during the three years the Corporation Counsel's motion to

13

dismiss was pending. (*See* ECF No. 21 at 1.) For example, on August 3, 2018, the plaintiff informed Judge Mauskopf that he had sought various administrative records from the Department of Corrections, including logbooks, food service orders, housing unit callouts, and program itineraries, which may have enabled him to discern the Deputy Warden of Security's identity prior to the expiration of the statute of limitations on his RLUIPA claims on June 25, 2021. (*Id.*) Accordingly, the Court finds that the plaintiff exercised "the level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004).

The Court also finds that the second prong of the equitable tolling doctrine is satisfied because of the prolonged litigation delays that have characterized this case. The Corporation Counsel submitted its fully briefed motion to dismiss the plaintiff's complaint on September 27, 2018. (ECF No. 22.) In the four years that followed, there was no discovery. The reassignment of the case from Judge Mauskopf to me caused additional delay, as did the plaintiff's inability to send and receive mail from prison. (*See* ECF entry on Sept. 25, 2019.)[11]

Courts in this Circuit have held in the context of other federal statutes, that "delay caused by the time required for a court to rule on a motion . . . may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine." *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011); *McDermott v. Fed. Sav. Bank*, No. 14-CV-6657, 2018 WL 6718599, at *4 (E.D.N.Y. Sept. 28, 2018), *report and recommendation adopted*, No. 14-CV-6657, 2019 WL 1305992 (E.D.N.Y. Mar. 22, 2019)

---

[11] The plaintiff's demand that Magistrate Judge Marcia M. Henry be removed from this case (ECF No. 48 at 2) is denied. Pursuant to 28 U.S.C. § 636(b)(1)(A), "a district judge may refer nondispositive motions[ ] . . . to a magistrate judge for decision without the parties' consent." *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). The plaintiff also seeks sanctions against the Corporation Counsel because it has not complied with this Court's discovery orders, but the Court has not issued any discovery orders in this case.

(30-month delay by Court in ruling on collective certification motion under FLSA warranted equitable tolling).

Similarly, the Second Circuit has invoked equitable tolling when judicial delays cause prisoners to miss deadlines for filing *habeas corpus* petitions. *Favourite v. Colvin*, 758 F. App'x 68, 70 (2d Cir. 2018) ("[T]he three-month delay in [the petitioner's] first receiving the state court's decision is the type of prolonged delay that justifies equitable tolling."); *Yusuf v. Colvin*, No. 18-CV-3360, 2022 WL 4291784, at *7 (E.D.N.Y. Sept. 16, 2022) ("[A] state court's failure to send notice within a reasonable time after entry of an order completing a prisoner's collateral attack can provide a basis for equitable tolling.").[12]

Finally, the Court finds that a sufficient causal relationship exists between the delays in this case, and the plaintiff's inability to identify the Deputy Warden of Security before the statute of limitations expired for his RLUIPA claims. The Second Circuit has instructed that *pro se* litigants, and particularly prisoners, are "entitled to assistance from the district court in identifying a defendant." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 404 n.1 (S.D.N.Y. 2014) (citing *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997)). Because of the delays in this case, the plaintiff, through no fault of his own, has not been able to identify the Deputy Warden. Accordingly, the statute of limitations on the plaintiff's RLUIPA claim is tolled from September 27, 2018, the date the Corporation Counsel filed its fully briefed motion to dismiss, to December 14, 2021, the date the Court ruled on the motion.

---

[12] In addition, the plaintiff has alleged on multiple occasions that his legal papers were confiscated at the Auburn Correctional Facility in May 2021, shortly before the expiration of the statute of limitations on his RLUIPA claim. (ECF No. 38 at 35.) The Second Circuit has held in the *habeas corpus* context that "confiscation of a prisoner's legal papers by a corrections officer shortly before the filing deadline may justify equitable tolling and permit the filing of a petition after the statute of limitations ordinarily would have run." *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000).

## CONCLUSION

The plaintiff's amended complaint does not cure the deficiencies I identified in his Fourth, Fifth, Seventh, Eighth, Ninth, Tenth and Fourteenth Amendment claims, nor does it allege sufficient facts to rescue his claims against former New York City Comptroller, Scott Stringer, former New York City Department of Correction Commissioner Joseph Ponte, or the City of New York.  Accordingly, these claims are dismissed.  The amended complaint contains sufficient new allegations to state First Amendment free exercise and RLUIPA claims against the Deputy of Warden of Security John Doe, as well as a RLUIPA claim against Warden Robin Beaulieu.  These claims may proceed to discovery along with the plaintiff's existing free exercise claim against Beaulieu.  Pursuant to *Valentin v. Dinkins*, the Court requests that the Corporation Counsel ascertain the full name and service address of the Deputy Warden of Security at the Brooklyn Detention Complex on June 25, 2017.  *See* 121 F.3d 72 (2d. Cir. 1997).  The Corporation Counsel need not undertake to defend or indemnify the John Doe defendant at this time.  This Order merely provides a means by which the plaintiff may name and properly serve the John Doe defendant as instructed by the Second Circuit in *Valentin*.

**SO ORDERED.**

                                                  s/Ann M. Donnelly
                                                _____
                                                ANN M. DONNELLY
                                                United States District Judge

Dated: Brooklyn, New York
       January 27, 2023